## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CLEVELAND TUMBLIN**                                 **CIVIL ACTION**

**VERSUS**                                           **NO.  06-2578**

**WARDEN HENDERSON**                                 **SECTION "F"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

### I.    Factual Background

The petitioner, Cleveland Tumblin ("Tumblin"), is an inmate currently incarcerated in the C. Paul Phelps Correctional Center in DeQuincy, Louisiana.[2]  On July 17, 2001, Tumblin was

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

charged by Bill of Information in Orleans Parish with the attempted second degree murder of Benoit Watson.[3]

The record reflects that, on May 16, 2001, at approximately 2:00 p.m., the victim, Benoit Watson, spoke with Tumblin at a friend's house. Tumblin showed Watson a sawed-off shotgun and a .357 magnum. Tumblin told Watson that he wanted to pawn the pistol and asked if Watson had any money. Watson told Tumblin that he was not interested but that he would help Tumblin find someone to whom he could pawn the pistol. Watson found a purchaser for the pistol and he and Tumblin took the guns to Tumblin's sister's home across the street from the Safeway on Martin Luther King Avenue. Watson sat and drank wine with Tumblin while they waited for the purchaser to return with the money. At some point, Tumblin retrieved the guns from the house and began to brandish them. Watson left and walked across the street to the Safeway parking lot to talk to a friend. Tumblin then approached Watson and placed the gun against his head, demanding to know where his gun was. Watson brushed him away and told him that the gun was where he left it, on his sister's porch across the street. Watson turned and walked away. Watson did not see who fired the shot but he recalled people telling him that he had been shot.

Albert Alfred was exiting the Safeway store at around 3:00 p.m. when he saw a man, later identified as Tumblin, point a shotgun at the victim, later identified as Watson.[4] Alfred yelled at Tumblin, who then pointed the gun at him. Alfred hid behind a van in the parking lot and watched as Tumblin turned the shotgun on Watson again. Watson turned to walk away and Tumblin shot

---

[3]St. Rec. Vol. 2 OF 3, Bill of Information, 7/17/01.

[4]The facts of the case were taken from the opinion of the Louisiana Fourth Circuit Court of Appeal on out-of-time appeal. *State v. Tumblin*, 857 So.2d 1045, 1047-48 (La. App. 4th Cir. 2003); St. Rec. Vol. 1 of 3, 4th Cir. Opinion, 2002-KA-1643, 9/17/03.

him.  Albert yelled at Tumblin again and again Tumblin pointed the gun towards him.  Albert then ran from the parking lot when he encountered New Orleans Police Officer Errol Allen and told him Tumblin had just shot Watson.

Officer Allen was patrolling on Martin Luther King Avenue near the B.W. Cooper Housing Development when he saw a group of people fleeing the Safeway parking lot.  They flagged the officer down to tell him that someone was shooting in the parking lot.  Officer Allen turned his car around and drove into the store parking lot, where he saw people ducking behind vehicles and pointing to a man, later identified as Tumblin, who was walking away.  Albert, a witness, told the officer that Tumblin had just shot someone.  Officer Allen noticed that Tumblin was carrying something in his hand, which he placed behind a large oak tree.  Tumblin attempted to leave the scene on a bicycle, but the bicycle was chained to a railing.  Officer Allen drew his weapon and ordered Tumblin to lie down. When Tumblin complied, Officer Allen handcuffed him and placed him in the police car.  Tumblin told the officer that the other man had taken his money.  Officer Allen retrieved the sawed-off shotgun which Tumblin had place behind the tree.  Officer Allen also retrieved one spent twelve-gauge casing from the barrel of the shotgun, and  one live shotgun round, two thirty-eight caliber rounds and one three fifty-seven Magnum round from Tumblin's clothing. The officer then called for medical aid for the victim, who was lying face down on the ground, with a wound to his right mid-back area.

The police later spoke to Albert, the witness, on the scene, and he pointed out Tumblin as the shooter.  Albert also identified Tumblin from a picture and testified at trial that the police arrested the correct man.  He also identified the shotgun.

On November 8, 2001, Tumblin was tried by a jury and found guilty of aggravated battery.[5] The Trial Court denied Tumblin's motion for a new trial on December 17, 2001, and sentence him to serve 10 years in prison.[6]  Tumblin's counsel also gave oral notice that he would file an appeal.[7] The State also noticed its intent to file a multiple bill.[8]

Tumblin did not file a written appeal or seek timely reconsideration of his sentence.  His conviction became final five business days later, on December 24, 2001.  *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the state appeal process); *see Cousin v. Lensing*, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914[9]); La. Code Crim. P. art. 13 (weekends and holidays not included in calculation of period less than seven days.)

Over three months later, on April 12, 2002, Tumblin's counsel moved for and was granted an out of time appeal.[10]   His counsel raised three grounds for relief:[11] (1) The evidence was insufficient to prove Tumblin to be the perpetrator based on the inconsistent eyewitness testimony;

---

[5]St. Rec. Vol. 2 of 3, Trial Minutes, 11/8/01; Trial Transcript, 11/8/01.

[6]St. Rec. Vol. 2 of 3, Sentencing Minutes, 12/17/01; Sentencing Transcript, 12/17/01.

[7]*Id.*

[8]St. Rec. Vol. 2 of 3, Sentencing Transcript, p. 7, 12/17/01.  The record does not contain a copy of the multiple bill or an indication as to the date of filing.

[9]At the time of the conviction, La. Code Crim. P. art. 914 required that a criminal defendant move for leave to appeal within five days of the order or judgment that is being appealed or of a ruling on a timely motion to reconsider a sentence.  Failure to move timely for appeal under Article 914 renders the conviction and sentence final at the expiration of the period for filing the motion for appeal. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985).  Article 914 was later amended by La. Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal.

[10]St. Rec. Vol. 2 of 3, Motion for Out of Time Appeal, 4/12/02; Minute Entry, 4/12/02.

[11]St. Rec. Vol. 1 of 3, Appeal Brief, 2002-KA-1643, 9/12/02.

(2) the Trial Court erred in denying the motion to quash the multiple bill based on the ten year cleansing period in violation of the prohibition against ex post facto laws; and (3) the Trial Court erred in finding Tumblin to be a second offender where there was no evidence presented as to the discharge date of the prior offense, which must be proven beyond a reasonable doubt before a jury.

By June 13, 2002, while the appeal was pending, the State began multiple offender proceedings.[12] Tumblin's counsel thereafter filed a motion to quash the multiple offender bill, which the Trial Court denied on July 12, 2002.[13] Tumblin later entered a plea of guilty to the multiple bill on August 2, 2002.[14] The Trial Court sentenced him that day to serve 10 years as a second offender without benefit of parole, probation, or suspension of sentence.[15]

On September 17, 2003, the Louisiana Fourth Circuit Court of Appeal affirmed Tumblin's conviction and sentence finding his first claim to be without merit.[16] The Court also found that Tumblin had not reserved the second claim for appeal, which alternatively was found to be without merit. The Court further held that, with respect to the third claim, Tumblin waived his right to a hearing on the multiple bill which precluded him from challenging on appeal the denial of a hearing. Tumblin did not seek further review of this order.[17]

---

[12]St. Rec. Vol. 2 of 3, Docket Entry, 6/13/02.

[13]St. Rec. Vol. 2 of 3, Minute Entry, 7/12/02; Motion to Quash Multiple Bill of Information, undated.

[14]St. Rec. Vol. 2 of 3, Sentencing Transcript, p. 7, 12/17/01; Multiple Bill Hearing Transcript, 8/2/02.

[15]St. Rec. Vol. 2 of 3, Multiple Bill Hearing Transcript, 8/2/02.

[16]*State v. Tumblin*, 857 So.2d 1045, 1047-48 (La. App. 4th Cir. 2003); St. Rec. Vol. 1 of 3, 4th Cir. Opinion, 2002-KA-1643, 9/17/03.

[17]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to file a writ application in the Louisiana Supreme Court. Tumblin did not do so. *See* St. Rec. Vol. 3 of 3, Certification Letter, 12/19/06.

## II.    __Procedural History__

Six months later, Tumblin caused to be mailed to the Trial Court a Uniform Application for Post Conviction Relief.[18]  In the application, Tumblin alleged that he was denied effective assistance of counsel because his counsel failed to object to hearsay identification testimony at trial, failed to request special jury instructions, and failed to object to the Trial Court's off-the-record contact with a prosecution witness.

On July 9, 2004, Tumblin submitted a writ application to the Louisiana Fourth Circuit seeking an order compelling the Trial Court to rule on his application for post conviction relief.[19] The Court construed the pleading as one seeking a supervisory writ and denied the application on September 27, 2004.[20]  In doing so, the Court noted that the Trial Court had in fact denied Tumblin's application for post conviction relief on June 15, 2004.  The Court also indicated that it "reviewed relator's application and finds no error in that judgment."[21]

Over six weeks later, on November 15, 2004, Tumblin prepared a writ application for filing in the Louisiana Supreme Court, in which he raised five grounds for relief:[22] (1) the evidence was insufficient to support the conviction; (2) the evidence was insufficient to support the multiple

---

[18]Although the record does not contain a file-stamped copy of this pleading, Tumblin alleged to the state appellate court that he gave the pleading to prison officials for mailing to the Trial Court on April 14, 2004.  St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2004-K-1247, p. 1, 7/21/04; *see also*, Motion for Status (unfiled), dated 5/14/04).  The certified mail receipts are also attached to the record.  St. Rec. Vol. 3 of 3, Mail Receipts, 4/14/04.  A copy of the application for post conviction relief is also attached to Tumblin's later-filed writ application.  *See* St. Rec. Vol. 3 of 3, Uniform Application for Post Conviction Relief (unfiled) (signed 4/12/04).

[19]St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2004-K-1247, p. 1, 7/21/04 (signed 7/9/04).

[20]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2004-K-1247, 9/27/04.

[21]*Id.*

[22]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 04-KH-3108, 12/16/04 (signed 11/15/04) (postmarked 11/18/04).

offender adjudication and the motion to quash should have been granted because of the prohibition against ex post facto laws; (3) the Trial Court erred in finding Tumblin to be a second offender where there was no evidence of a discharge date as determined by a jury; (4) he was denied effective assistance of counsel where counsel failed to object to hearsay testimony, failed to request special jury charges, and failed to object to the Trial Court's off-record contact with a prosecution witness; and (5) Louisiana's post conviction laws deprived him of due process and equal protection by allowing the denial of his application for post conviction relief without an answer from the prosecution.  The Louisiana Supreme Court denied the application without reasons on November 28, 2005.[23]

## III.   <u>Federal Petition</u>

On June 28, 2006, Tumblin filed a petition for federal habeas corpus relief in which he alleged the following grounds for relief:[24] (1) the conviction was obtained by the use of evidence gained pursuant to an unconstitutional search and seizure; (2) ineffective assistance of counsel where counsel (a) failed to object to hearsay testimony, (b) failed to request special jury charges, (c) failed to object to the Trial Court's off-record contact with a prosecution witness; (d) failed to object to the legality of his arrest, (e) failed to object to the State's erroneous withholding of evidence, and (f) failed to present a meaningful adversarial challenge to the State's case; (3) ineffective assistance of appellate counsel who relied on an incomplete record to prepare the appeal; and (4) ineffective assistance of counsel during the multiple bill hearing where counsel advised him to admit to the matters charged in the bill.

---

[23]*State ex rel. Tumblin v. State*, 916 So.2d 135 (La. 2005); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2004-KH-3108, 11/28/05.

[24]Rec. Doc. No. 3.

In a letter attached to his petition, Tumblin supplemented his form petition to include a statement that he did not present all of the issues raised herein to the state courts before submitting them to this Court for review.[25]  The State filed a response to Tumblin's petition alleging that the petition was not timely filed.[26]

## IV.    Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[27] applies to Tumblin's petition, which is deemed filed in this court under the federal mailbox rule on May 6, 2006.[28]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[25]Rec. Doc. No. 3, pp. 36-37.

[26]Rec. Doc. No. 11.

[27]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Tumblin's federal habeas petition on June 28, 2006, when the filing fee was paid.  Tumblin dated his signature on the petition on May 6, 2006.  This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

In this case, the State argues that Tumblin's petition was not timely filed. A review of the record reflects that Tumblin's petition is not timely filed, for reasons other than those assigned by the State. Furthermore, though not raised by the State, the record demonstrates that Tumblin has failed to exhaust state court remedies as to all claims raised herein.

## V.   **Exhaustion Requirement**

Tumblin readily admits in his petition that he has not presented all of his claims to the state courts. The State has not addressed the exhaustion of state court remedies in this case because of its exclusive reliance on the time bar defense. The Court nevertheless will do so *sua sponte*. *McGee v. Estelle*, 722 F. 2d 1206, 1214 (5th Cir. 1984) (*en banc*). The State's failure to raise exhaustion is not a waiver of the defense. *See* 28 U.S.C. § 2254(b)(3).

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a prisoner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id.*, at 32.

As conceded by Tumblin, the only claims raised in any state court are three facets of his second claim, regarding ineffective assistance of counsel for failure to object to hearsay testimony, failure to request special jury charges, and failure to object to the Trial Court's off-record contact with a prosecution witness. These claims were raised on post conviction to the state trial court, the Louisiana Fourth Circuit, and the Louisiana Supreme Court. He, however, has not presented any of the other claims or grounds for relief to any state court, much less to the Louisiana Supreme Court in a procedurally proper manner as is required for exhaustion.

Tumblin suggests that his failure to present these claims was due to the faulty advice of other inmates and his counsel's failure to raise the issues on appeal. Tumblin, however, filed his post conviction application and later writ application in the state courts pro se, without counsel. At the time of the filing of this federal petition, Tumblin by his own representations was well aware of the need to complete exhaustion. As indicated in his pleadings, he has chosen to file his unexhausted

claims in this federal court without exhaustion because he simply wants federal review.  The record

discloses no good cause for Tumblin's failure to properly exhaust and the Court can find none from

its review of the record.  *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).  Therefore, this petition is

subject to dismissal without prejudice to allow Tumblin to pursue complete exhaustion.  *Pliler v.

Ford*, 542 U.S. 225, 233 (2004) (quoting *Rose*, 455 U.S. at 510); *Whitehead*, 157 F.3d at 387.

       Should Tumblin withdraw the unexhausted claims or amend his complaint to raise only the

exhausted claims, such a request would not entitle him to federal review.  As argued by the State,

the record demonstrates that Tumblin's federal petition is not timely filed and must be dismissed

with prejudice for that reason.

## VI.    <u>Statute of Limitations</u>

       The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his

conviction became final.[29]  *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).  As set forth above,

Tumblin's conviction became final on December 24, 2001, when he did not file a timely notice of

appeal or motion to reconsider his sentence.  A state conviction is final for AEDPA limitations

---

[29]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person
in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest
of--

A.      the date on which the judgment became final by the conclusion of direct review or the
           expiration of the time for seeking such review;

B.      the date on which the impediment to filing an application created by State action in violation
           of the Constitution or laws of the United States is removed, if the applicant was prevented
           from filing by such State actions;

C.      the date on which the constitutional right asserted was initially recognized by the Supreme
           Court, if the right has been newly recognized by the Supreme Court and made retroactively
           applicable to cases on collateral review;  or

D.      the date on which the factual predicate of the claim or claims presented could have been
           discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral
review with respect to the pertinent judgment or claim is pending shall not be counted toward any
period of limitation under this subsection.  28 U.S.C. § 2244(d).

purposes at the conclusion of the original period for seeking direct review and not at conclusion of an out-of-time appeal granted on application for post conviction relief. *McGee v. Cain*, 104 Fed. Appx. 989, 991-992 (5th Cir. July 28, 2004) (applying *Salinas v. Dretke*, 354 F.3d 425 (5th Cir.), *cert. denied*, 541 U.S. 1032 (2004)). The out-of-time appeal did not revive Tumblin's already final conviction or otherwise restart the calculation of the AEDPA filing period. *Id.* The State's suggestion that his conviction became final after that appeal is incorrect.

Under the plain language of § 2244, he had until December 24, 2002, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Tumblin's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a State post conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). The United States Fifth Circuit has clarified its prior opinions to the contrary and resolved that timeliness in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

12

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 2001 WL 995164, slip op. at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

The federal courts have also determined that requests for transcripts and copies of documents from the record, like those occasionally filed by petitioner, are not "applications for post-conviction or other collateral review" and therefore do not affect the timeliness calculations. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcripts is not "other collateral review" for tolling purposes); *see also Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, 2002 WL

63541 (E.D. La. Jan. 16, 2002); *Jones v. Johnson*, 2001 WL 1006062 at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. 2002) (delay in receipt of transcript, not required to file an application, does not warrant equitable tolling).

In this case, Tumblin's AEDPA filing period began to run on December 25, 2001, the day after his conviction became final.  The filing period ran for 108 days, until April 12, 2002, when his counsel filed the motion for an out of time appeal.  The Court notes that even if the multiple offender proceeding was already in progress, it was neither an application for state post conviction nor other collateral review of the pertinent judgment or claim which would have entitled Tumblin to statutory tolling under § 2244(d)(2).  *See Moore v. Cain*, 298 F.3d 361, 367 (5th Cir. 2002), *cert. denied*, 537 U.S. 1236 (2003).  The Court's research reveals no case law which would indicate otherwise.

Nevertheless, the filing period remained tolled through the pendency of the out of time appeal which ended on October 17, 2003.  This was 30 days after the appellate court ruled and Tumblin did not pursue further review in the Louisiana Supreme Court.  Thus, the filing period began to run again on October 18, 2003, and did so without interruption for 179 days, until April 14, 2004, when Tumblin presented his application for post conviction relief to prison officials for mailing to the state trial court.[30]

The filing period remained tolled from April 14, 2004, through the pendency of Tumblin's related writ application in the Louisiana Fourth Circuit.  The State argues in its opposition memorandum that the appellate writ application was not properly filed and therefore provided no tolling benefits.

---

[30]*See Causey*, 450 F.3d at 604-05.

14

The State bases its argument on the fact that the writ application was filed seeking mandamus relief. In general, requests for mandamus relief that do not challenge the conviction or seek post conviction relief are not properly filed applications for post conviction relief and will not toll the limitations period. *See Sibley v. Culliver*, 377 F.3d 1196, 1200 (11th Cir. 2004) (quoting *Voravongsa v. Wall*, 349 F.3d 1, 6 (1st Cir. 2003) (to qualify as an application for post conviction or other collateral review, the document must state the grounds on which it is based and the relief desired and attack collaterally the relevant conviction or sentence).

In this case, however, Tumblin's mandamus application was in fact filed and treated by the Louisiana Fourth Circuit as a writ seeking supervisory review. In turn, the Louisiana Fourth Circuit denied the application after reviewing Tumblin's application for post conviction relief and determined that there was no error in the Trial Court's judgment. Thus, in spite of Tumblin's caption, the Court processed the applciation as one seeking supervisory review and resolved his post conviction claims. For these reasons, the Court must consider the writ application as a properly filed state application for post conviction relief or other collateral review.[31]

Thus, the filing period remained tolled from April 14, 2004, until October 27, 2004, which was 30 days after the Louisiana Fourth Circuit denied the writ application. The filing period began to run again on October 28, 2004, and did so without interruption for an additional 78 days, until January 14, 2005, when it expired. Tumblin had no properly filed state application for post conviction relief or other collateral review pending during that time period.

---

[31]Tumblin's application was signed on July 9, 2004, which was the earliest date on which it could have been given to prison officials for mailing to be filed in the Louisiana Fourth Circuit. This date, even if coincidental, was within 30 days of the Trial Court's June 15, 2004 ruling.

The Court is aware that Tumblin filed a writ application with the Louisiana Supreme Court during that time period, which was signed by him on November 15, 2004, postmarked to the Court on November 18, 2004, and filed in the Court on December 16, 2004. However, as these dates demonstrate and for the following reasons, this pleading was not timely signed, postmarked or filed within 30 days of the issuance of the underlying appellate court decision and therefore does not toll the limitations period.

The United States Fifth Circuit Court of Appeals has held that a writ application to the Louisiana Supreme Court which fails to comply with La. S. Ct. R. X§5(a) is not properly filed because it is untimely, and post conviction review is not pending for purposes of AEDPA's statute of limitations and tolling doctrines. *Williams v. Cain*, 217 F.3d at 309-11; *see Pace*, 544 U.S. at 414. Rule X§5(a) requires that a writ application seeking review of an appellate court ruling be filed or postmarked within 30 days of the issuance of the appellate court's order.

According to the record, the Louisiana Fourth Circuit resolved Tumblin's post conviction application on September 27, 2004. Under Louisiana law, he had until October 27, 2004, to seek further review in the Louisiana Supreme Court. Tumblin's writ application, however, was not filed in the Louisiana Supreme Court until December 16, 2004, and bore a postmark date of November 18, 2004. Both dates are beyond the 30 day period allowed under La. S. Ct. R. X§5. Affording Tumblin every benefit, his signature date of November 15, 2004, would have been the earliest date on which he could have given his application to prison officials for mailing to the Court. This date was 18 days after the period allowed under Louisiana law. Therefore, Tumblin's 2004 writ application to the Louisiana Supreme Court was not timely and was not properly filed for tolling

purposes.  Therefore, Tumblin is not entitled to tolling during the pendency of that application. Under the provisions for statutory tolling, Tumblin's federal petition is not timely filed.

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus.  *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).  Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848.

Tumblin has not provided, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling.  Even if a reviewing court were to consider it, the record demonstrates that Tumblin allowed an additional 158 days to pass between the conclusion of his state post conviction pursuits and the filing of this federal petition.  Furthermore, to the extent he seeks to blame his prior counsel for any part of his delay, he is not entitled to tolling even if the delay is the result of counsel's error.  *Salinas*, 354 F.2d at 432 (quoting *Cousin*, 310 F.3d at 848).

Tumblin's federal petition is deemed filed on May 6, 2006, which was over 15 months after the filing period expired on January 14, 2005.  His petition must be dismissed as untimely.  In the alternative, Tumblin's petition can be dismissed without prejudice for failure to exhaust state court remedies as outlined above.

**VII.** **Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Tumblin's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _____21st_____ day of _____May_____, 2008.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**